Good morning. Aloha. And on behalf of my colleagues, Judge Hawkins and Judge Clifton, welcome to the Ninth Circuit. We have a number of cases that we have submitted previously, and the following cases are submitted. Sanchez-LaTorre v. Bondi, Ramirez-Rincon v. Bondi, Houlihan v. Bisignano, and Woolley v. Bisignano are all submitted without argument. We have three cases on the argument calendar today, and we will take them in the order in which they appear on the calendar. Our first case is United States v. Castro-Camacho. Each of you have 10 minutes and whenever you are ready. Phil Brennan Good morning. May it please the Court, my name is Phil Brennan. I'm here representing the appellant and the defendant below, Mr. Castro-Camacho. I would like to reserve two minutes of my time for rebuttal. We're asking the Court today to reverse the District Court's decision to deny our motion for compassionate release and or reduction in sentence, and to direct the Court on remand that it is proper to consider within its discretion not only the zero-point offender amendment to the guidelines, but also the math error cited in our briefing. There are many things that are not in dispute in this case. If Mr. Castro-Camacho were to be sentenced today under the current guidelines, his low-end range would be 51 months. That's based on a criminal history of one and an offender-level score of 24, and that leads to that range. Number two, we're asking for a sentence that is the low-end of that range, which is 51 months, which will amount to time served. He's going to be deported and his current BOP release date is in November, so that would result in him being immediately released from prison. The question in this appeal is how do we get there? And that's what I presented to the District Court judge, two options, both of which would get us to the same result, the 51-month sentence. With regard to the reduction in sentence component, which is 3582C2, the question is whether that provides a vehicle for the Court to reduce the sentence to the low-end of the range of 51 months. The question we start with, both with regard to reduction in sentence and compassionate release, is the same, which is, first, what does the statute tell us? The statute says, first of all, it asks, has there been an amendment to the guidelines? The answer is yes, the zero-point offender. The second question asks whether a reduction in sentence would be consistent with applicable policy statements. We maintain the portion of 1B, the sentencing guideline 1B1.10b1, says that we sentence the defendant as if that amended guideline were in place. Counsel, you agreed that the correct guideline range at the time of sentencing would have been 63 to 78, right? Correct, Your Honor. And he got 60? Correct. All right. So I certainly understand your argument, and I think the district judge did too, and the district judge candidly admitted he had made an error, or they had made an error. Here is where I have a problem. How do you get past Dillon? And Dillon says, the policy statement instructs courts not to reduce a term of imprisonment below the minimum of an amended sentencing range, except to the extent the original term of imprisonment was below the range then applicable. If he got 60, and the range then applicable was 63 to 78, how do we get around what the Supreme Court has instructed us in Dillon? Well, I think Dillon applies a different, there is a different fact pattern there in the sense that there is not an agreed sentencing or mathematical error, and I don't think the court considered that. Also, in that case, the defendant is seeking something that I am not seeking in this case, which is revisiting, rehashing some of the guideline amendments. Dillon did not involve an agreed error. And I think the problem in reading Dillon the way the government and the district court does is that we have a fiction. When we go back and we look at applying the zero-point offender, we have to pretend that the math is correct. And I understand this court's concern that every defendant... Why? Why do we have to pretend? I mean, that was a decision made some time ago, and the limitation contained in the policy statement and the thrust of Dillon, and indeed, as I believe, is that decisions made a long time ago don't customarily get revisited. Even if the district court has a change of heart, it's not empowered to go back and decide, I did that wrong, I'm going to sentence again. What's done is done with very narrow limitations. And so you keep describing it as a mathematical error. I'm not sure it was a mathematical error. The district judge made what he subsequently acknowledged was a mistake in believing that you couldn't get two different credits for a minor role. That wasn't math, but it was the mistake that was made at the time that led to that sentence. And district courts do not have inherent power to go back and redo what they did before. That's true, Your Honor, but there is a vehicle to revisit the sentence, which is 3582, which says, is there an amendment to the guidelines? The answer is yes, that's undisputed, zero-point offender. And then the portion that I've cited with regard to the guideline talks about sentencing the defendant as if he were sentenced today and or at the time that that guideline was in place. I think at least the first portion of that is inconsistent with the district court's conclusion that it cannot essentially sentence him as if he were being sentenced today. I read that provision, which is 1B, 1.10, little B, little 1. The first portion of it says, the amended guideline that would have been applicable to the defendant if the amendment to the guidelines listed in subsection D had been in effect at the time the defendant was sentenced. But the next sentence says something very different from what you're suggesting. And that, to me, Your Honor, at the very least, is an inconsistency that goes in the direction of my client, based on just basic fairness. But also, it says that what we're not going to do in that next sentence is we're not going to pick any amendments that aren't included in subsection D. Well, that's not the situation here. We are in subsection D, which is the zero-point offender. What the court, I think what Your Honor is looking at is – And shall leave all other guideline application decisions unaffected. And one of the guideline application decisions made by the district court before, even though acknowledged would have been incorrect, is that he didn't qualify for both of the benefits for minor role. That's correct, Your Honor. Well, how is that not affected by what you're trying to argue for today? Well, first of all, I don't think that's what the statute dictates. The statute just says, is it consistent with the guidelines, the policy statements? And I think the entirety of the guidelines, my approach, would be consistent with the entirety of those guidelines. One other aspect of Dillon that didn't raise, wasn't raised, was the second component of my argument, which is compassionate release. And I think that's also the same vehicle this court can use, or a different vehicle this court can get to the same result. What did your client tell the sentencing court in connection with his efforts to secure compassionate relief? He did not raise compassionate release. He raised reduction in sentence. So I was the one that raised it as an amended portion of his motion. And what do you say? What's his position with regard to compassionate relief? My understanding is the district court had nothing before it about that. Well, Your Honor, first of all, compassionate release, I think if we were in the pre-November 2023 situation where Arruda says any reason is appropriate, I think I win. Because my client and I would say that a legal error in terms of not giving minor role reduction points combined with the zero point offender is certainly a basis to revisit sentencing. What this court did in a number of cases, such as Chen and Roper, was sending the court back its ability to consider the changes in the law, which, for example, the career offender, things like that. So we think this compassionate release is a proper vehicle for the court to consider. With regard to the second component of Your Honor's question, perhaps the court's relating to the 3553 factors, which Judge Bryan decided was yet another basis to deny my motion. I think that's the weakest argument as far as supporting the district court's decision on appeal because that was never in dispute. If you look at the briefing and you look at actually the facts of this case, you see that Mr. Castro Camacho, putting aside the fact he was drug trafficking, had an exemplary record. He was given a lower end sentence for that very reason. He's college educated, had a very good job, and that was leading up to sentencing, earning him a lower reduced, I'm sorry, a sentence below the guideline range. In the Bureau of Prisons, he's been absolutely star-studded. He has had a job, GED, been orderly, taken Bible classes, etc., and he's in a low-security prison and has served most of his sentence. So I think the 3553 analysis is hard to support on appeal, and certainly the government never challenged that. That wasn't what this case was about. Counsel, you've got under a minute. Did you want to reserve the rest of your time? I do, Your Honor. Thank you. You're welcome. Good morning, and may it please the Court. Tanya Culbertson on behalf of the United States. The District Court did not abuse its discretion in denying Mr. Castro Camacho's request for relief under 3582C1 and C2. I'll discuss C2 first. As to Mr. Castro Camacho's C2 arguments, Dillon rejected those precise arguments. To get Mr. Castro Camacho any relief under Amendment 821, you would first have to correct the admitted sentencing error at the original sentencing proceeding. Supreme Court has held that that kind of correction, quote, exceeds the scope of 3582C2 proceedings, which I think, as this Court recognizes, are a narrow exception to the rule of finality, and as Judge Clifton pointed out, District Courts are not empowered to go back and correct any mistake they may have made. Counsel, is there anything in the record about what sentence the defendant would have received originally had the District Court not made the error that the District Court conceded it made? So, do you mean in terms of the calculation of the guideline range? No, in terms of what he actually would have gotten. We don't know necessarily what the District Court would have gotten if it had started a calculation of the range at 63 to 78 instead of 78 to 87. It's certainly at least possible that since the District Court sentenced to three months under the minimum, that the District Court would have sentenced the defendant to under what the minimum would have been had they not made the mistake. That's certainly possible, Your Honor, but unfortunately there's just no way to get to that result under 3582C2, and in that respect, I would direct the Court to the 28J letter that we filed last week in United States v. Hardiman, where in that case, too, there was an undisputed guidelines calculation error. In that case, it was the District Court went above, made a finding of drug quantity above what the jury had found. If we were to agree with you, does the government think that's an unfair result here? I don't know about unfair. It's certainly unfortunate and regrettable, as the District Court admitted, but I think it is a result that is required by the statute, by the policy statement, and by the Supreme Court in Dillon. And, you know, I would also point out this arises in the context of a plea agreement with an appellate waiver, so as this Court knows, of course, defendants take on the risk that there may indeed be a calculation error or some other error at sentencing, but they are taking on that risk in order to get significant benefits under the plea agreement, and in this case, Mr. Castro Camacho got out from under his 10-year mandatory minimum sentence. How does it serve the government's interest to pursue the decision that, or pursue the application in this instance of a decision that is now acknowledged to have been incorrect? You know, I don't know that it, all I can speak to in terms of the government's interest is the government is bound to uphold the law the way we read the statute, the policy statement, and binding decisions by the Supreme Court and this Court. There is no way, you know, I understand the equities of this case are sympathetic, but there is no way under existing binding law to get to this result under C-2. Is there really no way, I mean, couldn't, again, if hypothetically we were to agree with your reading of Dillon, couldn't the Director make a motion, or couldn't the Director suggest a further reduction for extraordinary and compelling circumstances? So, I think if the, do you mean the Director of BOP? Yes. So, I think that motion would still fall under the new policy statement, because the Sentencing Commission has said that the policy statement that was promulgated in November of 2023 now governs both defendant and Director raised, raised compassionate release motions. So, you know, I did spend some time thinking, you know, was there any way that this mistake could have been corrected, understanding that there is an appellate waiver. One circumstance that perhaps on the unique facts of this case could have been done is a Rule 35a motion within 14 days of the judgment. On the strange facts of this case, where all the parties agreed that there was, you know, this five-point reduction would have been proper, assuming the Court correctly gave mitigating rule, perhaps the defendant could have filed a motion pointing out Application Note 6 to 3B1.2 to the District Court that nobody was able to direct the Court to in that moment, and asking the Court to correct its clear error. Now, unfortunately, that was not done here, but perhaps that would have been a route to correct it. Well, you know, again, hypothetically, were the panel to agree with, with your reading, perhaps the District Court might view something filed by the Director, since all we're talking about here is three or four months in a different light, but that's an Executive Department, not a Judicial Department decision. Sure, and, and perhaps the Director could make that recommendation. Our position would still be that would fall under the existing policy statement at 1B1.3. So the circumstances would still have to fall within one of those enumerated. You know, there's one through four, and then there's the catch-all at B5, which I think the District Court correctly decided was, you know, sort of the framework in which it needed to consider Mr. Castro Camacho's circumstances. And it simply concluded that these circumstances were not similar in gravity. They were not grave enough. They were certainly regrettable, but they did not rise to the level of extraordinary and compelling. And this Court would have to find that the District Court abused its discretion in reaching that conclusion, that it made an error of law. I feel like I'm caught in a mechanism that grinds on. I suspect you've had the feeling in at least some cases. This isn't the first case where I've had the feeling, but I get the feeling that, okay, the mechanism grinds on, and we're standing back and saying it shouldn't have gone that way, but it did, and then shrug our shoulders, and there's nothing to be done. I think, I mean, that arises certainly in cases especially with plea agreements with appellate waivers. So, I do want to remind the Court of that. Yet your office continues to extract appellate waivers. That is true, Your Honor, because it is a contract where we are a part of it. And our Court continues to enforce them. I get that. That's part of the mechanism that's distressed me. And to be honest, in this circumstance, although any time behind bars is an unpleasant situation, and I've seen cases far more egregious than this, and we sit and watch it happen. And that's not a comfortable situation to be in for us, or I suspect for you or anybody else involved in the system. That's right, Your Honor. And as I said, we all acknowledge this is a regrettable circumstance, even the judge acknowledged that. I would say you talk about sort of more egregious examples, and perhaps under B-5, that would be something that was similar in gravity. But here the nine-month deferential... Here it wasn't quite bad enough. It was. As the district court said, you know, and it was within the district court's discretion to make that finding. People my age are familiar with a phrase, catch 22, and I begin to have the feeling that we're in one. Okay. Your panel has no further questions.  Thank you. We ask that you affirm the judgment. All right. We'll give you a minute. Your Honor, I ask, do we know what the sentence would have been in the record? We do, because if we look at the plea agreement, paragraph 11, the government agrees to recommend the low end of the range. The government would have been, as determined by the court, so the government would have been asking for 51 months. So that is, I think, undisputed. The question I... One of the questions I've raised in my brief is, what exactly does the first prong of the right decision mean? Which is the determination of what is extraordinary and compelling. The problem in this case, I think, is the district court looks to the guidelines to answer that question, and that renders the first prong of right superfluous. I think instead what the court should do is tell the district court it can consider what it determines on its own to be extraordinary and compelling, and then determine whether it's inconsistent with the policy statements. Your Honor raised the prospect of having the director step in, and of course that's why we amended the statute, because the director was not stepping in at all. So I think that is highly unlikely, because the director, I think, did 23 cases, something like that, a year prior to the enactment of the changes. Your Honors, we think this is a grave injustice, and whether it's a reduction in sentence or a CR motion, we ask that it be remanded. All right, thank you. We thank counsel for their arguments, and the case just argued is submitted.
judges: HAWKINS, CLIFTON, BENNETT